## STATE vs. FRANCIS L. OAKS.

*Husband and Wife—Non-support—Former Marriage; Estopped to Deny.*

In a proceeding for non-support, the respondent, who was married to and thereafter lived with the complainant upwards of twenty-eight years, during which time several children were born to them, will not be heard to deny the validity of the marriage, because, at the time of the marriage, the complainant was married to another, then living; especially when shown that if the facts relied upon existed, the respondent had knowledge thereof six months after his marriage and continued to live with the complainant for so long a period.

(*May* 28, 1910.)

Judges CONRAD and WOOLLEY sitting.

*Josiah O. Wolcott,* Deputy Attorney-General, for the State.

*J. Frank Ball* for the defendant.

Court of General Sessions, New Castle County, May Term, 1910.

NON SUPPORT CASE.

CONRAD, J., delivering the opinion of the Court:

The evidence as produced by the State showed that Francis L. Oaks was married to the prosecuting witness, on December 16, 1880, by an Alderman in the city of Chester, Pennsylvania, whose authority to perform the marriage was admitted. At that time the prosecuting witness was known as Hannah M. Yerkes. It was shown that Hannah M. Yerkes lived with one Edwin Yerkes for a period covering several years, during which time she bore at least four children by him, and was recognized and introduced as his wife. It was while so living with him or about the time that marital relations between Edwin and Hannah M. Yerkes ceased, that the defendant Francis L. Oaks, became acquainted

with Hannah M. Yerkes and married her.  Edwin Yerkes left the neighborhood in which he had been living and no testimony was shown as to his whereabouts thereafter.  Neither was it shown that he had died.

The defendant claimed as a defense that he was not liable to support Hannah M. Oaks, alleging that she was not his lawful wife because at the time of her marriage to him (Oaks) she had a husband living to whom she had been lawfully married.  The prosecuting witness admitted living with Edwin Yerkes and bearing children by him but she denied that a marriage ceremony had ever been solemnized between them.  She did not know whether he was now living or dead.

Francis L. Oaks and Hannah M. Oaks, the prosecutrix, lived together as husband and wife from the time of the performance of the marriage ceremony between them on December 16, 1880, until sometime in the year 1908 (a period of twenty-eight years) when she claims the defendant deserted her and has not since contributed to her support.  Two children born of Francis L. Oaks and Hannah M. Oaks appeared as witnesses on behalf of their mother and the testimony showed that other children were born of the marriage.

The defendant while knowing that children had been born to Hannah M. Yerkes, claimed that at the time of his marriage with Hannah M. Yerkes he did not know of her alleged marriage with Edwin Yerkes, but that evidence of that fact came to his knowledge about six months after his marriage to her.  After obtaining this knowledge he continued to live with his wife upwards of twenty-eight years and, at least, four children of the marriage were born in that time.

A lawful marriage between Edwin Yerkes and the prosecuting witness has not been fully shown.  There was an attempt made to prove that a marriage certificate showing that fact was at one time in the possession of Hannah M. Oaks, but the evidence as to the certificate was vague and uncertain, and on the other hand, while Hannah M. Oaks admitted living with Edwin Yerkes and bearing children by him, she positively denied under oath that she had been lawfully married to him.

The present proceeding is *quasi* criminal in its nature with the State of Delaware as the prosecutor being a demand for support, under a statute of this State, on the part of a woman who is shown by the evidence to have lived with the defendant as his wife, and cohabited with him; the two, holding themselves out to the world as married, each recognizing the other as his or her spouse for a period of twenty-eight years.

It does not impress the Court as being the proper time or tribunal for the determination of a question so grave and important as that of the existence or non-existence of a prior legal marriage.    The Court here has before it but a single issue, that is, the liability of the defendant to contribute to the support of the prosecuting witness.    The woman who here claims the aid and succor of this Court has much more than established a *prima facie* case.    She has shown twenty-eight years of service rendered to this man in every way in which a wife serves her husband, and this in face of the fact that  Francis L. Oaks had been informed within six months after the time that he married her that she had been lawfully married to Edwin Yerkes, and that the bonds of marriage with Yerkes were still existing.    That was the time when the defendant was put on his guard.    An action for the annulment of his marriage would have tested its legality and either freed him from the unfortunate situation in which he found himself, or else his marriage would have been upheld thereby putting the seal of legitimacy upon his children.    But he restored to no such remedy, but on the contrary lived, seemingly with entire content, with the woman whom he had married, and no word of testimony was offered at the hearing in this case that indicates that he was not happy and satisfied with the wife he had chosen,—as no murmurs of discontent were heard until after the passing of twenty-eight years and when domestic difficulties arose, growing out of derelictions that seem traceable, largely, if not entirely to the defendant.

The Court declines to pass upon the question as to whether Edwin Yerkes was the lawful husband of Hannah M. Oaks when the latter was married to Francis L. Oaks.    The whole conduct

Opinion.

of the defendant, particularly his failure to apply for an annulment of the marriage when he was informed of the possible lawful marriage of his wife at a prior time with Edwin Yerkes, coupled with his chosen course in persistently living with and cohabiting with his wife, make out an estoppel against the defendant that fully and effectually debars him from urging the defense of a former lawful marriage on the part of his wife, thirty years after he had knowledge of the same.

It is a well established principle of law that when persons have represented themselves to be married or have assumed the relation of husband and wife, cohabiting and holding themselves out to the public as such, though not in fact married, they will, when it is sought to charge them with any of the civil liabilities growing out of that relation, be conclusively presumed to sustain such relation to each other, and will not be permitted to disprove or deny the marriage. (*Greenleaf on Evidence.*)

If persons, under such conditions, are estopped as to third persons, why shall they not, as against each other in all civil cases, be also precluded from gainsaying the marriage? The same reasons of morality and policy apply in the one case as in the other. And more especially should they be held to be estopped, as between themselves, when either is seeking to disturb or defeat rights which may have been acquired by the other either directly or indirectly on the faith of the marriage.

If the defendant feels himself aggrieved in his relation to his present wife by reason of her previous marriage to Edwin Yerkes, the law supplies him an ample remedy which is a proceeding for the annulment of the marriage between himself and the prosecuting witness.

The order of the Court is that the defendant give bond with sufficient surety in the penal sum of five hundred dollars, conditioned for the payment of the sum of ten dollars per month to Hannah M. Oaks, beginning June 15, 1910.