STATE v. DELBERT H. FOSTER

(*January* 29, 1948.)

LAYTON, J., sitting.

*Joseph H. Flanzer*, Deputy Attorney-General, for the State.

*A. James Gallo* for the Appellant.

Court of General Sessions for New Castle County, No. 33, January Term, 1948.

LAYTON, J., delivering the opinion of the Court:

The case comes to me by way of an appeal from the Family Court on a charge of desertion and non-support. In the Court Below the defendant, whom I shall hereafter refer to as "husband", was found guilty of deserting his wife in necessitous and destitute circumstances. The complaining witness, hereinafter referred to as "wife", was the only witness for the State. Briefly, she testified that she and her husband had been living in Portsmouth, Virginia, for approximately three years prior to August 2, 1938. The husband was in the regular Navy and was on shipboard a great deal of the time, but he maintained an apartment in Portsmouth for his wife and child and made his home at the apartment when on shore. On August 2d, the wife testified that the husband asked her to move to Brooklyn, New York, because his ship would be stationed at the Brooklyn Navy Yard for the next six or eight months. On that day she says that she left Portsmouth with her child, proceeded to

Brooklyn and established a home for herself and husband, that he used the apartment in Brooklyn as a home when ashore during the ensuing six or eight months and enjoyed marital relations with her in this home whenever ashore. Thereafter, about February 1, 1939, she and her son returned to Norfolk, established a new home there and she and her husband lived in Norfolk as man and wife until about March, 1943. Sometime later her husband was apparently transferred to Wilmington, Delaware, and she followed him to this city, established a home for him here and continued to live in Wilmington with her son until the desertion complained of, which occurred early in 1947. Shortly after she established residence in Wilmington for herself and family, her husband was ordered to Maine. She, however, remained in Wilmington, but in March, 1946, he received his discharge from the Navy and returned to live with his family in Wilmington where, she states, he deserted her in January, 1947. Further testimony reveals that the husband at all times from August 2, 1938, until the desertion complained of, held the complaining witness out to be his wife, that he represented to the naval authorities that she was his wife, claimed exemption for her as his wife in filing income tax returns and obtained her entry for treatment to a United States Naval Hospital, alleging that she was his wife. She denied that she was ever served with a summons in divorce in Portsmouth, Virginia, on or about the nineteenth day of July, 1938, or was aware of a decree of divorce thereafter entered by the Circuit Court of Virginia for the City of Portsmouth.

The husband testified that they were domiciled in Portsmouth for three years prior to the summer of 1938, but that during the summer of 1938 he returned from a cruise and was warned by a friend that his wife had been misbehaving. At his instigation, police officers called at his apartment and there found a sailor in a compromising situation with his

wife. Immediately, he testified that he instituted a divorce proceeding on the grounds of adultery and expelled her from his home, but because he was a sailor, infrequently ashore, and had no one with whom he could leave his child, he permitted his wife to take the child with her and regularly sent her sufficient funds for the maintenance of the child. He states that his wife left Portsmouth on August 2, 1938, or thereabouts, and went to Brooklyn which was her home before marriage, and that he did on one or two occasions call at this home in Brooklyn to see his child when his ship was in port there, but that he never thereafter had marital relations with his wife. He admitted that she returned to Portsmouth in the early part of 1939 and lived there and that he would call at the apartment to see his child when his ship was in port in Portsmouth . When his wife moved to Wilmington in March, 1943, he admits that she had a home in Wilmington and that he visited her occasionally, but he was soon ordered to Maine, where he stayed until March, 1946, and that during this period he rarely, if ever, saw his wife. After his return to Wilmington in 1946, his testimony is not entirely clear whether he admits living at the Wilmington home of his wife without enjoying marital relations with her, or whether he denies entirely living with her.

Proceeding back for a moment to the summer of 1938, he and other witnesses gave depositions in the divorce proceeding upon the ground of adultery charged against his wife, and on October 24th a decree of divorce was granted by the Circuit Court of the City of Portsmouth against his wife. The exemplified copy of this divorce decree which is in evidence shows the process, the Chancery summons, the sheriff's return of personal service on the wife on July 19, 1938, the bill of complaint, four depositions—three by police officers and one by the husband—as to the adultery, and the decree of said court divorcing the husband from the wife.

The divorce decree of the Circuit Court of Portsmouth, Virginia, dated October 24, 1938, is set up as a defense to the charge of desertion and non-support which occurred in January, 1947. The State makes two contentions, (1) That the decree of divorce is invalid because (a) the Virginia Court had no jurisdiction of the parties (b) because the Court had no jurisdiction of the subject matter and (c) because Defendant, the husband, had condoned the act of adultery prior to the rendition of the decree; and (2) Even if the decree in question is valid and binding, the evidence of a reunion and cohabitation as man and wife for a period of nine years after the date of the decree of divorce established the existence of a new marriage upon which an information for desertion and non-support can be sustained.

█ The first contention on the part of the State amounts to a collateral attack upon the validity of a decree of divorce of the Courts of Virginia. Insofar as foreign decrees are concerned, where a judgment rendered in one State is challenged in another, a want of jurisdiction over either the person or the subject matter is open to inquiry. *Milliken v. Meyer,* 311 *U. S.* 457, 61 *S. Ct.* 339, 85 *L. Ed.* 278, 132 *A.L.R.* 1357; *Ainscow v. Alexander,* 28 *Del. Chan.* 545, 39 *A.* 2d 54. Thus, if no personal service were in fact obtained upon the wife in the Virginia proceedings (no attempt at service by publication having been made) or if the Plaintiff in that proceeding, Defendant here, had removed his domicile from Virginia to New York State so that the Virginia Court had no jurisdiction of the subject matter, such decree would be invalid and no severance of the marital status would have occurred. But proof sufficient to sustain a finding of lack of jurisdiction of a foreign Court must necessarily be clear and convincing and the evidence before me falls short of sustaining the State's contention that the Virginia Court had jurisdiction of neither the parties nor the subject matter,

The exemplified copy of the Virginia decree in this case contains also the record entries of the entire proceeding. A return of personal service was made on July 19, 1938, upon the wife, the complaining witness here. She admits being in Portsmouth on that day. Her whereabouts were known. She may not have understood the significance of the service upon her or she may have forgotten the event after the lapse of ten years but I am convinced, and so find, that personal service was made upon Mrs. Foster in the Virginia divorce proceeding.

Nor am I satisfied from the evidence that the Defendant here, Plaintiff in the Virginia action, removed his domicile from Virginia so that the Courts of that state lost jurisdiction of the subject matter of the action. I cannot ignore completely the record of the Virginia proceeding containing as it does the depositions of three police officers in the City of Portsmouth pointing clearly to marital misconduct on the part of the wife in Portsmouth, Virginia, on or about July 19, 1938. The husband also so testified and it is not unnatural that, returning from a cruise to find his wife in an extremely compromising situation, he expelled her from his home and instituted a divorce action. Having no one with whom to leave his son, he allowed his wife to assume custody of the child. It is reasonable that she should have elected to return to Brooklyn from whence she originally came. But the fact that he visited his son in Brooklyn on the few occasions his ship was there prior to October 24, 1938, or even resumed marital relations with his wife at these times could not affect a change of his domicile. In fact, even if the wife's testimony were accepted as true, the Defendant's alleged change of residence to Brooklyn was but temporary and for the limited purpose of having his family near him during a period of six to eight months while his ship was based at the Brooklyn Navy Yard. She admits

returning to Portsmouth within six months thereafter. No change of domicile could have taken place under such facts.

An excellent treatise on the subject of residence and domicile is to be found in the opinion of former Chief Justice Layton in New York Trust Co. v. Riley, 24 Del. Ch. 354, 16 A. 2d 772; at page 783 of the opinion it is stated: "A domicile once established remains the legal domicile until a new one is acquired. The essentials of domicile of choice are the fact of physical presence at a dwelling place and the intention to make that place home. There must be a concurrence of fact and intent. The absence of either precludes the change. *State v. Frest*, 4 *Harr.* 558. There must be an actual abandonment of the first domicile coupled with an intention not to return to it, and the acquisition of a new domicile by actual residence in another place with the intention of making that place a permanent home. Whether one has changed his domicile from one place to another must depend largely on his intention. The intention must be of permanent or indefinite living at a given place, not for mere temporary or special purposes, but with a present intention of making that place home unless or until something uncertain or unexpected shall induce the adoption of some other permanent home; or, negatively expressed, there must be an absence of any present intention of not residing at the place permanently or for an indefinite time."

There was a fixed domicile in Portsmouth, Virginia, in July, 1938. Under the facts of this case I am compelled to the conclusion that it was not abandoned and that the Virginia Court had jurisdiction of the subject matter of the divorce proceeding in question.

But the State further contends that this divorce proceeding is not entitled to full faith and credit for the reason that the evidence discloses a condonation by the husband of his wife's misconduct because of visits to her Brook-

lyn apartment and the resumption of marital relations with her there prior to the entry of the Virginia divorce decree. However, my inquiry into the validity of that decree is confined to the question whether the Virginia Court had jurisdiction of the parties and the subject matter. A defense of condonation cannot serve as the basis for a collateral attack in Delaware on a Virginia divorce decree for it does not go to the jurisdiction. This contention is, therefore, dismissed.

■ Finally, the State contends that regardless of the validity of the Virginia decree of divorce, the husband, in fact, resumed marital relations with his wife, thereafter lived with her openly as man and wife for nine years or so and held her out to the public as his wife. The State argues that such evidence is sufficient to establish the existence of a new marriage after the divorce or, at least, a situation whereby the husband is, in a manner of speaking, estopped to deny a re-marriage. I was not particularly impressed by this contention at the trial but I must confess to being somewhat disturbed at first by the holdings of the cases upon which the State relies in this connection. Further analysis of these cases, however, convinces me that these decisions are to be distinguished from the case at bar.

*State v. Adams*, 2 *Boyce* 588, 83 *A.* 936, 937, was an indictment for wife beating where one of the issues was whether the accused was, in fact, husband of the prosecutrix, who was unable to make formal proof of their marriage. The complaining witness testified that there was a marriage ceremony twelve years before in Philadelphia, but she did not remember the exact date, the name of the minister, nor could she produce the certificate. However, she further testified that she had lived with the Defendant thereafter for twelve years, had had seven children, and that her husband during all such period had held her out openly as his wife. The husband admitted all facts except the ceremony

of marriage. Woolley, J., submitted the issue of the marriage to the jury, however, quoting from language in *State v. Oaks,* 1 *Boyce* 576, 76 *A.* 480, 481, as follows: "It is a well-established principle of law that when persons have represented themselves to be married or have assumed the relation of husband and wife, cohabiting and holding themselves out to the public as such, though not in fact married, they will, when it is sought to charge them with any of the civil liabilities growing out of that relation, be conclusively presumed to sustain such relation to each other, and will not be permitted to disprove or deny the marriage."

In *State v. Miller,* 3 *Penn.* 518, 52 *A.* 262, a wife brought a desertion and non-support charge against her husband. The prosecutrix testified that there was a legal marriage ceremony at which she was married to her husband in Philadelphia in 1877, and that they had lived thereafter together as man and wife openly and notoriously for twenty-five years during which time three children were born to them. She claimed thereafter that her husband deserted her. The husband admitted all the facts except the ceremony of marriage, which he denied.

Grubb, J., stated 3 Penn. 518, 52 A. at page 264 of the opinion, as follows: "The law warranting the proof of the fact of a legal marriage by circumstantial evidence in a proceeding like the present one before this court seems to us to be well established by abundant authority. This proceeding for securing a reasonable maintenance for a wife or children, pursuant to chapter 230, vol. 18, in our court of general sessions, has uniformly been deemed here a quasi criminal proceeding merely. In this proceeding, therefore, we consider that the fact of an actual marriage in either this or a sister state may properly be proved by competent and satisfactory circumstantial evidence." A support order was placed against the defendant in this case.

In *State v. Oaks,* 1 *Boyce* 576, 76 *A.* 480, 481, there was another desertion and support charge brought by a wife who claimed a legal marriage ceremony and an open and notorious cohabitation with her husband for twenty-eight years thereafter, during which time two children were born of the marriage. She admitted that prior to the marriage she had lived with another man by whom she had had four children but denied that she was married to him. The husband admitted all the facts except he claimed that the wife was actually married to the former man at a valid ceremony, for which reason he was not the lawful husband of the prosecuting witness and, therefore, not liable for desertion and non-support of a woman who was not his wife. The Court held that he was in possession of all the facts at the time of his marriage and could have tested its validity by an action for annulment. The Court then stated the law to be as quoted by Judge Woolley in *State v. Adams, supra.*

It must be emphasized at this point in the three cases just cited the prosecutrix testified to a valid marriage ceremony, a loss of the certificate and open cohabitation with the alleged husband as man and wife uninterruptedly for periods ranging from twelve to twenty-eight years, with children born of the union. It seems clearly to be the law in this State, therefore, that such facts are sufficient to submit to a jury as to the existence of a valid marriage insofar as a desertion and non-support action is concerned.

But here we have no such situation. I must concede that I believe from the evidence that some time after October 24, 1938, the husband and wife in this case resumed marital relations probably at or about the time she returned to Portsmouth in the early part of 1939, and that these marital relations continued, but only spasmodically, until the desertion by the husband in 1947. While they may have

lived together as man and wife in Virginia from the early part of 1939 until 1943 when they moved their home to Wilmington, Delaware, the wife testified that shortly after coming to this city, the husband began drinking and keeping bad company and that she was instrumental in effecting his transfer to Bath, Maine, for a period of about two years during which she only saw him once, and where, she testifies, he was living with another woman. He did return to Wilmington, however, in 1946 upon his discharge from the Navy and resumed cohabitation with his wife for about one year. These facts, as already observed, are quite different from the facts of the three Delaware cases hereinabove discussed. The only marriage relied upon by the complainant in this case is the original one in 1928 but, unlike the situation presented in the above cases, this was severed by the divorce in 1938. The wife here does not rely upon a remarriage, but rather on a mere coming together again and open cohabitation for approximately nine years, during which period she admits not living with her husband at all for two years, and also during a portion of which period he was openly living with another woman. Sympathetic as I may be to the situation in which this prosecutrix finds herself, I cannot hold that the facts in the case at Bar are governed by the principles of law laid down in the Delaware cases above cited. Delaware does not recognize common law marriages and to hold that the evidence before me is sufficient to establish the existence of a marriage would, for all practical purposes, so far relax the necessary proof of marriage hereafter as to charge a common law husband with liability for support under Section 3527 of the Revised Code of Delaware, of 1935.

I accordingly hold that the evidence in this case does not come within the principles announced in the Delaware cases above discussed, that no re-marriage took place after

October 24, 1938, that the Defendant in this case is not the husband within the meaning of Section 3527 of the Revised Code of 1935, and therefore, is not guilty of the offense as charged.