STATE of Wisconsin, Plaintiff-Respondent,

v.

Timothy Bernard WILKS, Defendant-Appellant.†

Court of Appeals

*No. 83–737–CR. Submitted on briefs December 14, 1983.—*
*Decided January 24, 1984.*
(Also reported in 345 N.W.2d 498.)

---

† Petition to review granted.

For the defendant-appellant the cause was submitted on the briefs of *Margaret A. Maroney,* assistant state public defender, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with *Daniel J. O'Brien,* assistant attorney general, of counsel, of Madison.

Before Wedemeyer, P.J., Decker and Moser, JJ.

WEDEMEYER, P.J.   Timothy Bernard Wilks appeals from judgments of conviction, both entered December 14, 1982, wherein he pled guilty to attempted robbery and attempted burglary, contrary to secs. 943.32(1)(a) and 939.32, and secs. 943.10(1)(a) and 939.32, Stats., respectively.  On appeal Wilks raises the following issues:

(1) whether he was denied his constitutional rights[1] to be free from unreasonable seizures when he was forced to submit to a lineup following his arrest for the violation of a city of Milwaukee ordinance; (2) whether city of Milwaukee ordinance sec. 106–31(1)(a) is unconstitutionally vague;[2] and (3) whether city of Milwaukee ordinance sec. 106–31(1)(a) violates the fourth amendment of the United States Constitution and article I, section 11 of the Wisconsin Constitution by authorizing unreasonable seizures. Because we conclude that there is no merit to any of the issues raised by Wilks, we affirm.

On August 29, 1981, Milwaukee police officers Maxime Taylor and Rudolph Binter were driving eastbound in the 2500 block of West Capitol Drive in a marked uni-

---

[1] U.S. Const. amend. IV; Wis. Const. art. I, § 11.

[2] City of Milwaukee ordinance sec. 106–31(1)(a) reads as follows:

106–31. Loitering or Prowling. (1) Whoever does any of the following within the limits of the city of Milwaukee may be fined not more than five hundred dollars ($500) or upon default of payment thereof, shall be imprisoned in the house of correction of Milwaukee county for not more than 90 days.

(a) LOITERING. Loiters or prowls in a place, at a time, or in a manner not usual for law-abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity. Among the circumstances which may be considered in determining whether such alarm is warranted is the fact that the actor takes flight upon appearance of a peace officer, refuses to identify himself, or manifestly endeavors to conceal himself or any object. Unless flight by the actor or other circumstances makes it impracticable, a peace officer shall prior to any arrest for an offense under this section, afford the actor an opportunity to dispel any alarm which would otherwise be warranted, by requesting him to identify himself and explain his presence and conduct. No person shall be convicted of an offense under this section if the peace officer did not comply with the preceding sentence, or if it appears at trial that the explanation given by the actor was true and, if believed by the peace officer at the time, would have dispelled the alarm.

form squad car. At approximately 4:15 a.m., they received a dispatch regarding an entry in progress at 4007 North 25th Street. Taylor testified that he turned off the squad car's headlights and proceeded to the location of the entry in progress. Taylor stated that he observed Wilks standing about one to two feet away from the corner of a building at 4007 North 25th Street. Wilks then ran south across Capitol Drive, passing within fifteen to twenty feet of the front of the squad car. Taylor stopped Wilks about seventy-five to one hundred yards away from the building.

Wilks was asked his name and his address, to which he responded truthfully. Wilks was then asked what he was doing in the area. Wilks immediately responded that he was not breaking into any houses. When asked where he had come from, Wilks stated that he had just left a bar in the 3900 block of North Teutonia. After advising Wilks of all the inconsistencies in his story, the officers placed him under arrest for violating the city of Milwaukee's loitering ordinance. Milwaukee, Wis., Ordinance sec. 106–31(1)(a)(1981).

Following Wilks' arrest, Binter interviewed the individual who reported the break-in. Binter stated that this individual told him that a screen had been removed from a window of the building. This window was approximately twenty feet from where Wilks had initially been seen by the police officers.

Sometime[3] after his arrest, Wilks was placed in a lineup which involved criminal offenses not related to the civil offense for which he was originally arrested. Wilks was identified by two individuals, Alice Ness and Evelyn Sandberg. Ness stated that Wilks was the man she found standing in her kitchen without her permission on August 20, 1981. She also stated that Wilks was the

[3] We are unable to ascertain the exact date of the lineup from the record.

man she saw on her front porch on August 25, 1981. When Wilks left on that occasion, she discovered that a board which secured her front door had been loosened. As a result of these incidents, Wilks was charged with criminal trespass and attempted burglary.

Sandberg identified Wilks as the man she found on her front porch on August 26, 1981. Sandberg stated that when she asked Wilks what he wanted, Wilks stated: "I want your money." When Sandberg told him she had no money, Wilks kicked in the screen door and grabbed her blouse. Sandberg screamed and Wilks fled. As a result of this incident, Wilks was charged with attempted robbery as a habitual criminal.

Wilks moved to suppress the identifications on the grounds that there was no probable cause for his initial arrest and that, because he was arrested for an ordinance violation, it was improper to force him to submit to a criminal lineup. Following the trial court's denial of his motion, Wilks pled guilty to attempted robbery and attempted burglary.

## LINEUP

Wilks initially contends that his constitutional rights to be free from unreasonable seizures were violated when he was forced to submit to a lineup following his arrest for an ordinance violation. We are not persuaded by this contention.

### Probable Cause

Our first area of inquiry is whether the police officers had probable cause to arrest Wilks for the ordinance violation.

The power to arrest must be authorized by statute. *City of Madison v. Two Crow*, 88 Wis. 2d 156, 159, 276

N.W.2d 359, 361 (Ct. App. 1979). Section 800.02(6), Stats., authorizes law enforcement officials to arrest a person "without a warrant for the violation of a municipal ordinance if the arresting officer *has reasonable grounds to believe that the person is violating or has violated the ordinance.*" [Emphasis added.] The highlighted language above establishes a probable cause requirement before an individual may be arrested for an ordinance violation.

The standard of review when an appellate court determines whether probable cause to arrest exists is a question of law if the historical facts are undisputed. *State v. Drogsvold,* 104 Wis. 2d 247, 262, 311 N.W.2d 243, 250 (Ct. App. 1981). When this court is presented with a question of law, the determination will be reviewed independently on appeal without deference to the conclusion of the trial court. *Id.* Where some of the facts are disputed, appellate courts first apply the "clearly erroneous" test to the trial court's findings regarding those facts, and then examine those findings and the undisputed facts independently. *See id.* at 260, 311 N.W.2d at 249; *see also Noll v. Dimiceli's, Inc.,* 115 Wis. 2d 641, 643–44, 340 N.W.2d 575, 577 (Ct. App. 1983).

In discussing the requirements for probable cause to arrest our supreme court has recently stated:

The probable cause standard required to arrest dictates that quantum of evidence which would lead a reasonable police officer to believe that the defendant probably committed the offense. The evidence must show that there is more than a possibility or suspicion that the defendant committed the offense. The evidence need not reach the level of proof beyond a reasonable doubt or even that guilt is more likely than not. *State v. Paszek,* 50 Wis. 2d at 624–25. In *State v. Paszek,* 50 Wis. 2d at 624–25, we described probable cause as follows:

"Probable cause to arrest refers to that quantum of evidence which would lead a reasonable police officer to believe that the defendant probably committed a crime. It is not necessary that the evidence giving rise to such probable cause be sufficient to prove guilt beyond a reasonable doubt, nor must it be sufficient to prove that guilt is more probable than not. It is only necessary that the information lead a reasonable officer to believe that guilt is more than a possibility, and it is well established that the belief may be predicated in part upon hearsay information. The quantum of information which constitutes probable cause to arrest must be measured by the facts of the particular case. Probable cause is defined in *Draper v. United States, supra,* p. 313, as:

" ' "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act." Probable cause exists where "the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. *Carroll v. United States,* 267 U.S. 132." ' " *State v. Paszek,* 50 Wis. 2d at 624–25 (citations omitted). *State v. Welsh,* 108 Wis. 2d 319, 329–30, 321 N.W.2d 245, 251 (1982), *cert. granted,* 103 S. Ct. 1182 (1983).

██ The record reveals that the majority of evidence in this case is undisputed. The only relevant fact which appears to be in dispute is when and in what context Wilks stated that "he was not breaking into any houses." Taylor testified that when he asked Wilks what he was doing in the area, Wilks immediately responded that he was not breaking into any houses. Binter, on the other hand, testified that when Wilks had told the officers his name, he informed Wilks that he remembered that Wilks had been arrested in the past for breaking into a house and raping a woman. Binter stated it was at this point

■

that Wilks "blurted out" that he was not breaking into any houses. The trial court did not make a specific finding concerning when this statement was made; however, where a trial court does not expressly make a finding necessary to support its legal conclusion, an appellate court can assume that the trial court made the finding in the way that supports its decision. *Id.* at 345, 321 N.W.2d at 258. (Abrahamson, J., dissenting.)

The ordinance in question makes it unlawful for anyone to: (1) loiter or prowl; (2) in a place, at a time, or in a manner not usual for law-abiding individuals; and (3) under circumstances that warrant alarm for the safety of persons or property in the vicinity. Milwaukee, Wis., Ordinance sec. 106–31(1)(a) (1981). The ordinance also specifies circumstances which can be considered in determining whether such alarm is warranted. One of the circumstances listed is flight by the actor upon appearance of a police officer. The ordinance also affords the actor the opportunity to dispel alarm by identifying himself and explaining his conduct.

■

From our review of the undisputed facts, we note that Wilks was observed standing in front of a building at 4:15 a.m., following the report of an entry in progress. When the officers approached Wilks in their marked squad car, Wilks ran across Capitol Drive, albeit in the crosswalk. Wilks was given the opportunity to identify himself and explain his conduct. While he did identify himself, we believe, as did the trial court, that the explanation of his conduct did not dispel alarm. Indeed, Wilks' story appears to be inconsistent. He initially stated that he was coming home from a bar. When the officers told him that the bars had been closed for approximately two hours, Wilks stated that he was just out walking around. When these facts are coupled with Wilks' statement denying that he was breaking into

any houses, whether or not that response was solicited, we conclude that the officers had reasonable grounds to believe Wilks had violated the ordinance. Therefore, we hold that the State had met its burden of proving the existence of probable cause to arrest. *See id.* at 329, 321 N.W.2d at 250–51.

*Reasonableness of Seizure*

We next address Wilks' contention that his constitutional rights to be free from unreasonable seizures have been violated by compelling him to submit to a criminal lineup merely because he had been arrested for a civil violation.

We agree with the parties that this is a question of first impression. We have been unable to find any cases specifically addressing this issue. We determine, however, that *Rigney v. Hendrick,* 355 F.2d 710 (3rd Cir. 1965), *cert. denied,* 384 U.S. 975 (1966), is helpful to the disposition of this issue.

In *Rigney* the appellants argued, *inter alia,* that before they could be forced to participate in a lineup regarding a crime for which they had not been arrested, they had to first be arrested for that crime. In dismissing this argument the court stated:

> The contention made by the appellants that there first must be an arrest before they are taken from their cells to be placed in a lineup has no merit, for the sole physical attribute of an arrest is the taking into custody. Here, it would be anomalous to require an arrest, for the appellants are already in custody. *Id.* at 713.

Like the appellants in *Rigney,* Wilks was forced to submit to a lineup for an unrelated offense. We can perceive no distinction between an arrest for a civil violation and an arrest for a criminal violation where a lineup is concerned. *See State ex rel. White v. Simpson,*

28 Wis. 2d 590, 596, 137 N.W.2d 391, 393 (1965). As long as the individual is lawfully in custody and his or her constitutional rights have been observed, he or she may be required to submit to a lineup for an unrelated criminal offense. Probable cause is the *sine qua non* of a lawful arrest. *Drogsvold, supra,* at 254, 311 N.W.2d at 246. As we have held above, the officers, here, clearly had probable cause to arrest Wilks. Therefore, we hold that Wilks' constitutional rights have not been violated by forcing him to submit to this lineup.

## CONSTITUTIONALITY OF CITY OF MILWAUKEE ORDINANCE SEC. 106–31(1)(a)

*Vagueness*

We first address the State's contention that Wilks has waived this issue because he failed to raise it in the trial court. In *State ex rel. Skinkis v. Treffert,* 90 Wis. 2d 528, 280 N.W.2d 316 (Ct. App. 1979), this court held that, where a challenge is made to the constitutionality of a statute or ordinance on the grounds of vagueness, such challenge presents an issue of subject matter jurisdiction which this court has a duty to consider. *See id.* at 538–39, 280 N.W.2d at 321. Accordingly, we must address the merits of this issue.

The State argues that Wilks lacks standing to challenge the ordinance on vagueness grounds because Wilks' conduct at the time of his arrest clearly fell within the "hard core" of the ordinances proscriptions. We agree with this argument.

In *Treffert* we stated:

The legal effect of a plea of guilty is to admit the facts charged, but not the crime. *State v. Pohlhammer,* 78 Wis. 2d 516, 523, 254 N.W.2d 478 (1977); *State v.*

*Lampe,* 26 Wis. 2d 646, 648, 133 N.W.2d 349 (1965). The initial question is whether the admitted facts fall within the "zone of prohibited conduct" so that no reasonable person could have doubt of their criminality. *State v. Driscoll,* 53 Wis. 2d 699, 702, 193 N.W.2d 851 (1972). If they do, then petitioner will not be heard to raise by hypothetical example fact situations which might arguably be prosecuted under this act, and as to which the statute might be unconstitutionally vague. *Butala v. State,* 71 Wis. 2d 569, 575, 239 N.W.2d 32 (1976) ; *Jones v. State,* 55 Wis. 2d 742, 746, 200 N.W.2d 587 (1972) ; *State v. Driscoll,* 53 Wis. 2d 699, 701–02. As the United States Supreme Court has held, *"even if the outermost boundaries of [the statute] may be imprecise, any such uncertainty has little relevance . . . where appellants' conduct falls squarely within the 'hard core' of the statute's proscriptions." Broadrick v. Oklahoma,* 413 U.S. 601, 608 (1973). A person to whose conduct a penal statute clearly applies has no standing to attack the statute as vague and void on its face. *Parker v. Levy,* 417 U.S. 733, 756 (1974). [Emphasis added.] *Id.* at 539–40, 280 N.W.2d at 321–22.

We have carefully reviewed the facts of this case and determine that Wilks' conduct clearly falls within the "hard core" of this ordinance. As the State aptly notes in its brief, "[Wilks] was not the classic vagrant who merely wanders aimlessly about the streets at night or the person who merely stands near a building late at night." Wilks was observed next to a building at 4:45 a.m., immediately following the report of an entry in progress. Upon the arrival of the police officers in a marked squad car, Wilks fled from the scene. When questioned about his being there, Wilks gave conflicting stories. We conclude that the facts of this case fall within the zone of prohibited conduct so that no reasonable person could have doubt of their criminality. Therefore, we decline Wilks' invitation to speculate as to the perimeters of the conduct this ordinance prohibits by

referring to hypothetical examples not presented by the facts before us. *See id.* at 542, 280 N.W.2d at 323.

*Lack of Probable Cause Requirement*

Lastly, Wilks argues that the ordinance is violative of the fourth amendment of the United States Constitution and article I, section 11 of the Wisconsin Constitution because it allows "police officers to circumvent the probable cause requirement and arrest when there only are 'circumstances that warrant alarm for the safety of persons or property.'" We find no merit to this argument.

As we have observed above, this ordinance requires the existence of probable cause before an officer may arrest an individual for its violation. Contrary to Wilks' argument, the officers need more than just mere circumstances that warrant alarm. The ordinance also requires that the individual be loitering or prowling in a place, at a time, or in a manner not usual for law-abiding individuals. The ordinance goes on to specify circumstances which may be considered in determining whether such alarm is warranted, *e.g.,* flight upon the appearance of a peace officer. The ordinance also allows the individual to dispel any alarm by explaining his or her conduct. It clearly requires more than mere suspicion before an arrest can be made. In addition, the power to arrest for a violation of this ordinance must be authorized by statute, *Two Crow, supra,* and the statute authorizing this arrest also contains a probable cause requirement. *See* sec. 800.02(6), Stats. Therefore, we hold that the ordinance does not violate the probable cause requirements of the United States and Wisconsin Constitutions.

*By the Court.*—Judgments affirmed.