798 P.2d 43

**STATE of Idaho, Plaintiff-Appellant,**

v.

**Myron BITT, Defendant-Respondent.**

**No. 17722.**

Supreme Court of Idaho.

Sept. 13, 1990.

Jim Jones, Atty. Gen., and Deputy Atty. Gen. Myrna A.I. Stahman, argued, Boise, for plaintiff-appellant.

Jeanette Wolfley, Fort Hall, for defendant-respondent.

BISTLINE, Justice.

On the night of April 22, 1987, a Pocatello police officer observed the defendant Myron Bitt banging his fists against the front door of a closed convenience store. When the officer pulled his patrol car into the store's parking lot, Bitt attempted to hide behind one of the store's gas pumps. Bitt identified himself when asked to do so, but Bitt could not produce any written identification. When asked by the officer why he hid behind the gas pump, Bitt did not respond and attempted to leave. The officer arrested Bitt.

Myron Bitt was charged by misdemeanor complaint with violating Pocatello City Ordinance § 9.16.070. Bitt moved before trial to dismiss the complaint against him on the ground that the ordinance is facially unconstitutional. The magistrate judge dismissed the complaint, holding that the ordinance is facially unconstitutional and void for vagueness. No trial was held. The district judge affirmed the holding of the magistrate judge. For the reasons stated in this opinion, we affirm the district judge's endorsement of the magistrate's[1] dismissal of the misdemeanor complaint, on the ground that Pocatello City Ordinance § 9.16.070 is void for vagueness. The interpretation of an ordinance is a question of law, and we therefore exercise free review. *City of Lewiston v. Mathewson,* 78 Idaho 347, 351, 303 P.2d 680, 682 (1956) ("The construction of an ordinance is a question of law for determination by the court"). Part I of this opinion discusses the void for vagueness test, and Part II analyzes the Pocatello ordinance.

## I. THE VOID FOR VAGUENESS TEST

An ordinance is void for vagueness when it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute" and permits arbitrary or discriminatory enforcement. *See United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954); *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). The basis for this rule of law is that "[all persons] are entitled to be informed as to what the State commands or forbids." *Lanzetta v. New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939) (footnote omitted). While courts recognize that "[i]n most English words and phrases there lurk uncertainties," *Rose v. Locke,* 423 U.S. 48, 50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975) (quoting *Robinson v. United States,* 324 U.S. 282, 286, 65 S.Ct. 666, 668, 89 L.Ed. 944 (1945)), a statute written in terms so ambiguous that persons "of common intelligence must necessarily guess at its meaning and differ as to its application" is unconstitutionally vague. *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). *See also Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). A more recent pronouncement of the reasons for the void for vagueness doctrine is included in *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972):

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbi-

---

1. As our Court of Appeals has stated: "On appeal from an order of the district court reviewing a determination made by a magistrate, we examine the record of the trial court independently of, but with due regard for, the district court's intermediate appellate decision." *Har-*

*ney v. Weatherby,* 116 Idaho 904, 906, 781 P.2d 241, 243 (Ct.App.1989) (citation omitted). Although the proper consideration of a criminal appeal requires a consideration of *criminal* case precedent, we find no reason to modify or not to apply this civil case rule to this criminal case.

trary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned,* 408 U.S. at 108–09, 92 S.Ct. at 2298–299 (footnotes omitted).

*Grayned* has been cited with approval by this Court. In *Voyles v. City of Nampa,* 97 Idaho 597, 548 P.2d 1217 (1976), we explained:

The due process clause of the fourteenth amendment to the Constitution of the United States requires that a city ordinance must be definite and certain in its statement of prohibited conduct to enable a person of ordinary intelligence who reads the ordinance to understand what activity is proscribed and govern his actions accordingly. *E.g., Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). The Constitution of the State of Idaho also requires that city ordinances demonstrate a definiteness and certainty sufficient to permit a person to conform his conduct thereto. Idaho Const. Art. I, § 13; *City of Lewiston v. Mathewson,* 78 Idaho 347, 303 P.2d 680 (1956). *See also State v. Evans,* 73 Idaho 50, 245 P.2d 788 (1952); *State v. Musser,* 67 Idaho 214, 176 P.2d 199 (1946). An ordinance which fulfills the requirements of certainty and definiteness still may be constitutionally infirm if its prohibition is overbroad, restricting constitutionally protected conduct. [Citation omitted.]

*Voyles,* 97 Idaho at 599, 548 P.2d at 1219. *See also State v. Newman,* 108 Idaho 5, 12, 696 P.2d 856, 863 (1985).

While the reasons for such a doctrine may be obvious, the steps in a test for vagueness have never been presented in a clear and unambiguous manner by the United States Supreme Court. *See* Note, *The Void–for–Vagueness Doctrine in the Supreme Court,* 109 U.Pa.L.Rev. 67 (1960).[2] Moreover, the steps announced by the federal Supreme Court do not quickly and easily translate into our state system of jurisprudence. Unlike the posture of the cases before the United States Supreme Court in *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), and *Village of Hoffman Estates v. Flipside,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), where no prosecution was pending and no showing of bad-faith enforcement or other special circumstances had been made, an earlier case which was before us in *State v. Newman,* 108 Idaho 5, 696 P.2d 856 (1985), and the case before us now both involve active prosecutions. This Court's attempt at a translation of the federal vagueness test in *State v. Newman* will now be clarified.

*Newman* relies upon *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). The question presented in *Steffel* was "whether declaratory relief is precluded when a state prosecution has been threatened, but is not pending, and a showing of bad-faith enforcement or other special circumstances has not been made." *Steffel,* 415 U.S. at 454, 94 S.Ct. at 1213. The test *Steffel* applied to determine if declaratory relief is warranted is extremely difficult for the party requesting declaratory judgment to satisfy:

Indeed, the State's concern with potential interference in the administration of its criminal laws is of lesser dimension when an attack is made upon the constitutionality of a state statute as applied. A declaratory judgment of a lower federal court that a state statute is invalid *in toto*—and therefore incapable of any val-

**2.** *See also* LaFave and Scott, Criminal Law 92 (1986) (footnotes omitted):

[T]here is no simple litmus-paper test for determining whether a criminal statute is void for vagueness. This has led some to question whether there is a thread of consistency running through the Supreme Court's decisions on this subject, although it is probably fair to conclude that a reasonable level of consistency appears once the underlying bases of the void-for-vagueness doctrine are identified.

id application—or is overbroad or vague—and therefore no person can properly be convicted under the statute until it is given a narrowing or clarifying construction, [citations omitted]—will likely have a more significant potential for disruption of state enforcement policies than a declaration specifying a limited number of impermissible applications of the statute.

*Steffel,* 415 U.S. at 474, 94 S.Ct. at 1223. This Court in *Newman,* in a footnote, quoted just a portion of the test announced in *Steffel.* 108 Idaho at 11 n. 7, 696 P.2d at 861. *Newman* also cited with approval to another United States Supreme Court case, *Village of Hoffman Estates v. Flipside,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), which involved another "pre-enforcement facial challenge" in federal court of a city ordinance, as the first sentence of the Supreme Court's opinion in *Flipside* states.

■ The reasons for having a hard test for a party challenging a state statute or city ordinance in federal court through a declaratory judgment proceeding include considerations of federalism, comity, and the abstention doctrine. States should be allowed to interpret and place "judicial gloss" on a state statute without this interpretation process being pre-empted by a binding judgment in federal court. Thus, *Steffel* "provides no authority for the granting of any injunctive relief nor does it provide authority for the granting of any relief at all when prosecutions are pending." 415 U.S. at 479, 94 S.Ct. at 1226 (Rehnquist, J., concurring). In other words, the relief provided by a federal court in these instances will be minor, even though the barrier to that relief is great:

> A declaratory judgment is simply a statement of rights, not a binding order supplemented by continuing sanctions. State authorities may choose to be guided by the judgment of a lower federal court, but they are not compelled to follow the decision by threat of contempt or other penalties.

*Steffel,* 415 U.S. at 482, 94 S.Ct. at 1227 (Rehnquist, J., concurring).

Contrary to our statement of the federal test in *Newman,* the federal Supreme Court has recognized that a vagueness challenge is more readily acknowledged if the statute challenged carries criminal penalties. In *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), the United States Supreme Court case that struck down a criminal statute analogous to the Pocatello ordinance, Justice White in dissent wrote:

> None of our cases "suggests that one who has received fair warning of the criminality of his own conduct from the statute in question is nonetheless entitled to attack it because the language would not give similar fair warning with respect to other conduct which might be within its broad and literal ambit. One to whose conduct a statute clearly applies may· not successfully challenge it for vagueness." *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 2561–2562, 41 L.Ed.2d 439 (1974). The correlative rule is that a criminal statute is not unconstitutionally vague on its face unless it is "impermissibly vague in all of its applications." *Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 497, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982).

*Kolender,* 461 U.S. at 369–70, 103 S.Ct. at 1865 (White, J., dissenting). The *Kolender* majority, after recognizing that *Kolender* was a declaratory judgment case in which no prosecution was pending, 461 U.S. at 355 n. 3, 103 S.Ct. at 1857, responded to the dissent's allegation that the Court had applied the wrong test:

> The description of our holdings [by the dissent] is inaccurate in several respects.... [W]here a statute imposes criminal penalties, the standard of certainty is higher. This concern has, at times, led us to invalidate a criminal statute on its face even when it could conceivably have had some valid application.

*Kolender,* 461 U.S. at 358 n. 8, 103 S.Ct. at 1859 (citations omitted).

Keeping in mind the cases we have discussed, the steps in a test for vagueness may now be stated. First, the court must

ask whether the ordinance regulates constitutionally protected conduct. If the answer to this first step is in the affirmative, then the next step asks whether the ordinance precludes a significant amount of the constitutionally protected conduct. If the answer to this step is also in the affirmative, then the ordinance is quite likely overbroad and must be restricted in its application or rewritten. But if the ordinance does not regulate constitutionally protected conduct, or if the ordinance does not preclude a significant amount of such conduct, then the next and last step is to ask whether (a) the ordinance gives notice to those who are subject to it, and (b) whether the ordinance contains guidelines and imposes sufficient discretion on those who must enforce the ordinance.

This last step can be satisfied and the enactment found constitutional with a recognition by the reviewing court, or by the party that urges the Court to find the statute or ordinance constitutional, of a core of circumstances to which the statute or ordinance could be unquestionably constitutionally applied. Where a constitutional ordinance is involved, such recognition should be a simple matter.

■ The reason a reviewing court prefers a recognition of the "core" of the activity targeted as criminal by the statute or ordinance is explained by the reference which the United States Supreme Court made in 1983, with approval, to a statement they made in 1876: "It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders and leave it to the courts to step inside and say who could be rightfully detained and who should be set at large." *Kolender,* 461 U.S. at 358, n. 7, 103 S.Ct. at

1858, quoting *United States v. Reese,* 92 U.S. 214, 221, 23 L.Ed. 563, 566 (1876). In other words, if the statute or ordinance is broad enough to catch everyone, it has no core of circumstances to which it applies and is therefore unconstitutionally vague.

## II. POCATELLO ORDINANCE § 9.16.070

For the reasons discussed in Part I, we confine our review to the language of the ordinance.[3] The ordinance provides that:

9.16.070 *Loitering and Prowling*

A. It is unlawful for any person to loiter or prowl in a place at a time or in a manner not usual for law-abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity.

Among the circumstances which may be considered in determining whether such alarm is warranted is the fact that the actor takes flight upon appearance of a peace officer, refuses to identify himself, or manifestly endeavors to conceal himself or any object.

Unless flight by the actor or other circumstances makes it impractical, a peace officer shall prior to any arrest for an offense under this section afford the actor an opportunity to dispel any alarm which would otherwise be warranted by requesting him to identify himself and explain his presence and conduct.

No person shall be convicted of an offense under this section if the peace officer did not comply with the preceding sentence, or if it appears at trial that the explanation given by the actor was true, and if believed by the peace officer at the time, would have dispelled the alarm.

---

**3.** We hold that the ordinance is unconstitutionally vague, and therefore no discussion of whether Bitt's conduct is proscribed by the ordinance is warranted. This approach is not new. For example, in *Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939), the United States Supreme Court considered the vagueness of New Jersey's gangster statute. The Court did not scrutinize the criminal charge, but studied the statute instead: "If on its face the challenged provision is repugnant to the due process clause, specification of details of the offense intended to be charged would not serve to validate it. It is the statute, not the accusation under it, that prescribes the rule to govern conduct and warns against transgression." *Lanzetta,* 306 U.S. at 453, 59 S.Ct. at 619 (citations omitted). *See also State v. Lopez,* 98 Idaho 581, 588, 570 P.2d 259, 266 (1976) (on rehearing September 27, 1977) ("We do not ... reach the issue of the effectiveness of the complaint since we hold that the statute is void-for-vagueness and violates appellant's constitutional right to due process of law.")

■ The first step in the void for vagueness test is to question whether the ordinance regulates constitutionally protected conduct. The defendant urges us to find that the ordinance impermissibly regulates the constitutionally protected right to freedom of movement. *See*, for example, *Kent v. Dulles*, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958); *Shuttlesworth v. City of Birmingham*, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965). However, even if the ordinance does regulate the right to free movement, we hold that the ordinance does not regulate a significant amount of such conduct. There is therefore no reason to discuss overbreadth. *See Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

The test for vagueness is not complete once the reviewing court has determined that the statute or ordinance is not overbroad. We must also ask whether the ordinance gives notice to those who are subject to it, and whether the ordinance provides sufficient guidelines to prevent arbitrary or discriminatory enforcement.

■ Does the ordinance provide sufficient notice to those who wish to avoid violating the ordinance? To avoid violating the ordinance, one should refrain from loitering or prowling "in a place at a time or in a manner not usual for law-abiding individuals." Such loitering or prowling must "warrant alarm for the safety of persons or property." We are certain that a reasonably intelligent individual could, if pressed, be able to form some idea of what sort of conduct the ordinance proscribes, and that may be sufficient. As the United States Supreme Court has said: "We recognize that in a noncommercial context behavior as a general rule is not mapped out in advance on the basis of statutory language." *Smith v. Goguen*, 415 U.S. 566, 574, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974) (footnote omitted) (flag misuse statute held void for vagueness).

■ The fatal constitutional flaw of this ordinance is brought out when we consider whether the ordinance provides sufficient guidelines to those who must enforce the ordinance.[4] In *Kolender*, the United States Supreme Court struck down as unconstitutionally vague a California stop and identify statute. The statute entrusted to the police officer on the beat full discretion to decide what constitutes "credible and reliable" identification. In any given situation, one police officer might accept a simple recitation of name and address as sufficient identification, while another officer might not. The California statute provided no guidelines to determine which officer had the correct approach to the enforcement of the statute. Similarly, the Pocatello ordinance vests complete discretion in individual police officers. As Judge Winmill explained in his memorandum decision:

In essence, the California statute requires that an individual identify himself and explain his presence when the officer has a reasonable suspicion of criminal activity based on objective facts, while the Pocatello ordinance requires such identification and explanation where the circumstances warrant alarm for 'the safety of persons or property in the vicinity.'

. . . .

In fact, the last two paragraphs of Section 9.16.070 make clear that an individual cannot be convicted, or even properly detained, unless he fails to identify himself and offer an explanation of his presence and conduct which will dispel the officer's alarm. In imposing this requirement, albeit in a backhanded manner, the ordinance suffers from the same constitutional infirmity that the Supreme Court ascribed to the California statute in the *Kolender* case. The ordinance vests virtually complete discretion in the hands of the police to determine whether the suspect has satisfied the identification and explanation provisions of the

---

**4.** Often, the lack of enforcement guidelines is what tolls the death knell. *See* for example *Smith v. Goguen*, quoted above: "[P]erhaps the most meaningful aspect of the vagueness doctrine is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement." *Smith*, 415 U.S. at 574, 94 S.Ct. at 1248.

ordinance and must be permitted to leave in the absence of probable cause to arrest the suspect on other charges. Inherent within such an enactment is the potential for arbitrary and discriminatory enforcement which requires invalidation of the ordinance under the void-for-vagueness doctrine.

R. 34–35. Thus, the Pocatello ordinance suffers from the same lack of enforcement guidelines as the California statute struck down in *Kolender.* The ordinance provides that a person cannot be arrested or convicted unless he fails to identify himself and offer an explanation of his presence and conduct which dispels the police officer's alarm. This vests complete discretion in the hands of the police officer to determine whether the person has provided a credible and reliable explanation. The ordinance therefore creates the potential for arbitrary and discriminatory arrests condemned in *Kolender,* and condemned by our State Constitution.

There is another reason for finding this ordinance constitutionally infirm. This reason also brings out the lack of guidelines for the ordinance's enforcement. In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court held that a police officer may temporarily detain and frisk a person for concealed weapons if the officer has reasonable suspicion of criminal activity, even though probable cause for arrest is lacking. Judge Winmill compared the *Terry* stop requirements with the Pocatello ordinance and stated:

The Pocatello ordinance, although employing different language, utilizes the *Terry* standard in defining conduct which authorizes a police officer to request an identification of the suspect and an explanation of his behavior. If the suspect fails to respond or his response is inadequate, his suspicious conduct may then serve as a predicate for his arrest, detention, conviction and punishment. In this way, the Pocatello ordinance criminalizes behavior which amounts to nothing more than the type of suspicious conduct which justifies a *Terry* stop. By far exceeding the limited intrusion on individual privacy permitted by the Constitution where an officer observes suspicious conduct not amounting to probable cause, the Pocatello ordinance clearly violates the defendant's rights under both the Idaho and United States Constitutions.

R. 37–38. We should keep in mind that the right to remain silent exists, *before* and *after* communication with the police. Justice White, in his concurring opinion in *Terry v. Ohio,* made this point perfectly clear:

There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets. Absent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and go on his way. However, given the proper circumstances, such as those in this case, it seems to me the person may be briefly detained against his will while pertinent questions are directed to him. Of course, the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest, *although it may alert the officer to the need for continued observation.*[5]

*Terry,* 392 U.S. at 34, 88 S.Ct. at 1886 (White, J. concurring) (emphasis and footnote supplied).

Justice Brennan, in his *Kolender* concurring opinion, reiterated this basic tenet of constitutional law:

We have held that the intrusiveness of even these brief [*Terry*] stops for purposes of questioning is sufficient to render them 'seizures' under the Fourth Amendment. For precisely that reason, the scope of seizures of the person on less than probable cause that *Terry* permits is strictly circumscribed to limit the degree of intrusion they cause. *Terry* encounters must be brief; the suspect must not be moved or asked to move more than a short distance; physical searches are permitted only to the extent

5. The Pocatello police officer would have been well within his rights had he concluded that Bitt's activities were suspicious enough to suggest further surveillance.

necessary to protect the police officers involved during the encounter; and, most importantly, the suspect must be free to leave after a short time and to decline to answer the questions put to him.

*Kolender,* 461 U.S. 352, 364–65, 103 S.Ct. 1855, 1862 (Brennan, J., concurring) (citation omitted).

In *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), the United States Supreme Court reversed the conviction of a person charged with violating a Texas statute that made it a criminal act to refuse to give their name and address to a police officer. The Court stated:

> The Texas statute under which appellant was stopped and required to identify himself is designed to advance a weighty social objective in large metropolitan centers: prevention of crime. But even assuming that purpose is served to some degree by stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it. When such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits.

*Brown,* 443 U.S. at 52, 99 S.Ct. at 2641 (citation omitted).

Finally, we note that Judge Winmill was not alone in recognizing the vagueness of the ordinance. Magistrate Judge Beebe's opinion had earlier identified the lack of enforcement guidelines as well:

> The ball game is not over until the police have performed the duty mandated by the [ordinance] and that is where the police offer the opportunity to dispel the alarm by requesting the suspect to identify himself and account for his presence. Whether he satisfies the officer or not *is a status upon which his arrest depends,* and that, in the Court's mind, is equivalent to entrusting to the police the job of judging whether an identification is 'credible and reliable' and that is a standardless sweep, and moment-to-moment law making, and the vesting of virtually complete discretion in the police, all of

which, the *Kolender* case tells us, an arrest may not depend. Now, *Kolender* was concerned about the *arrest* stage, and it is too late to save the citizen from arrest, handcuffs, bail bondsmen and lawyers, when the Defendant attempts, before there is a judge or jury, to avail himself of the following clause of the [Pocatello] ordinance:

> No person shall be convicted of an offense under this section if the peace officer did not comply with the preceding sentence, or if it appears at trial that the explanation given by the actor was true, and if believed by the peace officer at the time, would have dispelled the alarm.

R. 14.

For the reasons stated in this opinion, the district judge's affirmance of the magistrate's dismissal of the misdemeanor complaint is affirmed. We also affirm the decision of Judge Beebe.

JOHNSON, J., concurs.

McDEVITT, J., specially concurs.

BAKES, Chief Justice, dissenting:

This case involves a facial constitutional attack on Pocatello City Ordinance § 9.16.070, the loitering and prowling ordinance. This ordinance is modeled after the Model Penal Code, MPC § 250.6.

While the record does not reflect any written or oral motion to dismiss the complaint, nevertheless the magistrate court issued a memorandum decision on September 30, 1987, dismissing the complaint after considering defendant's challenge that the ordinance was facially unconstitutional. The magistrate court concluded "that Pocatello City Ordinance § 9.16.070 is facially unconstitutional as violating the Fourth Amendment of the United States Constitution and as a denial of due process of law by being vague and overbroad." The district court, in a written memorandum decision, affirmed the holding of the trial court. The court concluded that the Pocatello loitering and prowling ordinance is facially unconstitutional under the fourth, fifth and fourteenth amendments to the United

States Constitution, and under Art. 1, § 17, of the Idaho Constitution.

The sole issue on appeal is whether Pocatello City Ordinance § 9.16.070 is facially unconstitutional, *i.e.*, whether it is "invalid *in toto* and therefore incapable of any valid application." *Steffel v. Thompson*, 415 U.S. 452, 474, 94 S.Ct. 1209, 1223, 39 L.Ed.2d 505, 523 (1974); *State v. Newman*, 108 Idaho 5, 11, n. 7, 696 P.2d 856, 862, n. 7 (1985).

I

The defendant's attack on the ordinance was apparently made by a motion to dismiss; however, the record does not disclose such a motion. There is no statement in the record on appeal of the factual circumstances which resulted in the charges being filed against the defendant Bitt. However, both the magistrate's opinion and the opinion of the district court on appeal recite a factual scenario which is repeated in the briefs on appeal. The majority has recited those facts briefly, even though the defendant's facial attack and the magistrate's and district court's decisions are based upon a finding that the ordinance is unconstitutional under any and all factual circumstances, rather than a finding that the ordinance was unconstitutional as applied to the facts of this particular case.

While the facts were recited as they appear in the briefs submitted to us and in the decisions of the magistrate and district courts, this Court is not asked to rule upon the question of the application of the loitering and prowling statute to those particular facts. Rather, at issue is the ruling of the courts below that the ordinance is facially unconstitutional in *all* of its applications. A facial unconstitutional determination requires an analysis of whether there is *any* factual setting under which the application of the statute would be constitutional.[6] Thus, for purposes of that facial constitutional analysis, this court should consider any factual variant under which the statute might be applied which might compose a constitutional application. Two possible factual variants illustrate the broadness of the consideration which must be given to such a facial constitutional attack on a statute.

First, I believe the Court must consider whether the ordinance would be facially unconstitutional if the defendant Bitt, rather than being apprehended outside of the convenience store pounding on the door, was found after hours inside the store and when discovered attempted to hide, and when questioned concerning his presence inside the closed convenience store merely identified himself and then attempted to leave without responding further or explaining his presence in the closed store. Under such circumstances, would application of the loitering and prowling ordinance to the defendant's conduct be unconstitutional?

A second factual variant would arise if the defendant Bitt, dressed in dark clothing and wearing a ski mask, was discovered in the middle of the night crouching behind bushes beneath the open bedroom window of a 25-year-old woman. If when ap-

6. In *Kolender v. Lawson*, 461 U.S. 352, 358, n. 8, 103 S.Ct. 1855, 1859, n. 8, 75 L.Ed.2d 903 (1983), in dicta responding to a dissent by Justice White the footnote refers to *Colautti v. Franklin*, 439 U.S. 379, 394–401, 99 S.Ct. 675, 685–688, 58 L.Ed.2d 596 (1979) and *Lanzetta v. New Jersey*, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939), in which Justice White correctly characterizes their "upshot":

Whether ... a statute purports to regulate constitutionally protected conduct, it should not be held unconstitutionally vague on its face unless it is vague in all of its possible applications... *If any fool would know that a particular category of conduct would be within the reach of the statute, if there is an*

*unmistakable core that a reasonable person would know is forbidden by the law, the enactment is not unconstitutional on its face* and should not be vulnerable to a facial attack in a declaratory judgment action such as is involved in this case.

(Emphasis added) The language contained in the footnote does not overrule *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) or *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). If we continue to follow *Newman* and consider facial attacks on a criminal statute's validity as set forth in a motion to dismiss, then we should continue to assess the strength of this facial attack as if it were taking place in a declaratory judgment proceeding.

proached by an officer, he attempted to hide himself, and when questioned identified himself but attempted to leave, would the application of the loitering and prowling ordinance under those circumstances be unconstitutional?

Those two of serveral possible alternative factual scenarios are sufficient to point out the error in the Court's acceptance of the facial unconstitutionality claim raised by the defendant Bitt in this case.

## II

First is the claim that Pocatello City Ordinance § 9.16.070 [7] facially violates the fourth amendment to the United States Constitution, and Art. 1, § 17, of the Idaho Constitution, in all circumstances.

Bitt asserts and the majority has confirmed that the Pocatello ordinance is unconstitutional on its face under the decision of the United States Supreme Court in *Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), because it authorizes an arrest based on mere suspicion, thereby circumventing the fourth amendment requirement that arrests are only lawful upon a showing of probable cause. Bitt asserts, and the majority concurs with him, that the Pocatello ordinance criminalizes behavior which would otherwise give rise to a mere suspicion of criminal activity. The magistrate court agreed and declared the ordinance "authorizes the arrest, prosecution and conviction and punishment of

people suspected of committing another crime, without having probable cause to believe that the suspected crime is committed." However, the defendant Bitt's claim, and both the magistrate's analysis and the majority's concurrence, misperceive the conduct which constitutes the crime under the ordinance. The first paragraph of § 9.16.070 provides, "It is unlawful for any person to loiter or prowl in a place at a time or in a manner not usual for law abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity." The ordinance does *not* authorize the "conviction and punishment of people suspected of committing another crime ...," as the magistrate held. Rather, the ordinance makes it a crime to "loiter or prowl in a place at a time or in a manner not usual for law abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity." It is the "loitering or prowling" which constitutes the crime, not the officer's reasonable suspicion that another crime has been or is about to be committed. Accordingly, assuming that an ordinance defining a crime can be facially unconstitutional under the fourth amendment because it defines a criminal act which is based upon a mere suspicion of criminal activity,[8] the ordinance here does not criminalize "mere suspicion of criminal activity"; rather, it makes criminal loitering or prowling.

7. For a copy of Pocatello City Ordinance § 9.16.070 *Loitering and Prowling*, see p. 8 of the majority opinion.

8. Although the appellant asserts that Pocatello City Ordinance § 9.16.070 is facially unconstitutional under the fourth amendment of the United States Constitution, appellant cites no decision of the United States Supreme Court which has held a statute which defines a crime to violate the fourth amendment. Such a claim was made in *Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), and the United States Supreme Court expressly declined to so hold. In his special concurring opinion in *Kolender*, Justice Brennan argues that the California statute involved in *Kolender* would, in his opinion, violate the fourth amendment. However, he cites no authority for the proposition that an ordinance, defining a crime, can facially violate the fourth amendment of the United

States Constitution, and acknowledges that "[w]e have not in recent years found a state statute invalid directly under the Fourth Amendment...." 461 U.S. at 363, n. 1, 103 S.Ct. at 1861, n. 1. While he cites to *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), and its holding that "the government may not 'authorize police conduct which trenches upon Fourth Amendment rights, ...,'" *id.*, he recognizes that claims of fourth amendment violations are directed toward police conduct, rather than the definition of a crime as set out in the statute. Thus, Justice Brennan states, "The question thus has always been whether particular conduct by the police violated the Fourth Amendment, and we have not had to reach the question whether state law purporting to authorize such conduct also offended the Constitution." *Id.*

Because Bitt's claim is that the ordinance violates the fourth amendment under every application, I am not here concerned with whether or not the officer who arrested Bitt in this particular case had probable cause rather than merely a reasonable suspicion that the defendant Bitt had committed the crime of loitering and prowling in violation of Pocatello City Ordinance § 9.16.070. Rather, I am concerned with the question of whether, if the defendant Bitt were convicted of the crime of loitering and prowling in violation of § 9.16.070 and was imprisoned rather than merely fined, would that conviction and imprisonment constitute a violation of the fourth amendment of the United States Constitution under any factual scenario which could be considered under the statute. This Court was cited to no decision of the United States Supreme Court which has so held. The reason why there appears to be no decision of the United States Supreme Court holding that the definition of a crime in a statute can, by itself, violate the fourth amendment was recognized by Justice Brennan in his special concurring opinion in *Kolender* in which he states, "The question thus has always been whether particular conduct by the police violated the Fourth Amendment, and we have not had to reach the question whether state law purporting to authorize such conduct also offended the Constitution." 461 U.S. at 363, n. 1, 103 S.Ct. at 1861, n. 1. It is possible that a procedural statute which authorized the seizure of a person on less than probable cause could be held defective as applied under the fourth amendment. While a statute or ordinance which vaguely defines a crime has been held to be unconstitutional under the fifth amendment due process clause, as was the case in *Kolender*, neither the United States Supreme Court, nor any federal court to our knowledge, has ever held that a statute or ordinance which vaguely described a crime facially violates the fourth amendment to the United States Constitution because it authorizes the sei-

zure of a criminal defendant without probable cause. Furthermore, such a facial attack, which is based upon a claim that the statute is unconstitutional in all and any application, would have to assume that the penalty for such a conviction would be imprisonment, rather than merely a fine. If there were no imprisonment, but merely a fine, there would be no seizure, and thus no fourth amendment issue would be raised. *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

Accordingly, this Court should agree with the only other court to directly address this issue, the Wisconsin Supreme Court, which has held that a statute similar to Pocatello City Ordinance § 9.16.070 was not facially unconstitutional under the fourth amendment to the United States Constitution. *City of Milwaukee v. Nelson*, 149 Wis.2d 434, 439 N.W.2d 562 (1989); *State v. Wilks*, 117 Wis.2d 495, 345 N.W.2d 498 (1984), *aff'd on other grounds*, 121 Wis.2d 93, 358 N.W.2d 273 (1984). This Court should reject Bitt's fourth amendment and Art. 1, § 17, claims.[9]

### III

Appellant's main argument, and the primary basis for the magistrate's and the district court's holding below, is that Pocatello City Ordinance § 9.16.070 violates the due process clause of the fifth and fourteenth amendments of the United States Constitution. Appellant, the courts below and the majority opinion of this Court have based their claim of facial unconstitutionality upon the United States Supreme Court's decision in *Kolender v. Lawson, supra.*

The constitutionally infirm statute[10] in *Kolender* provided:

Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: ... (e) Who loiters or wanders upon *the streets or from place to place* without apparent reason

---

**9.** In *State v. Peterson*, 81 Idaho 233, 236, 340 P.2d 444, 446 (1959), we wrote: "Our constitutional provisions relating to searches and seizures and due process of law are substantially

the same as those of the United States Constitution."

**10.** California Penal Code Ann. (West 1970) § 647(e).

or business *and who refuses to identify himself* and to account for his presence when requested by any peace officer so to do, if the surrounding circumstances are such as to indicate to a reasonable man that *the public safety demands such identification.*

(Emphasis added.) The California courts had held that their loitering statute contained two elements, (1) loitering or wandering upon the streets or from place to place, and (2) refusal to identify oneself. *People v. Soloman,* 33 Cal.App.3d 429, 108 Cal.Rptr. 867 (1973). The California courts had construed the ordinance to require the suspect to provide a "credible and reliable" identification. The United States Supreme Court in *Kolender* concluded that the statute as construed by the California Court of Appeal "is unconstitutionally vague within the meaning of the Due Process Clause of the Fourteenth Amendment by failing to clarify what is contemplated by the requirement that a suspect provide a 'credible and reliable' identification." 461 U.S. at 353, 103 S.Ct. at 1855, 75 L.Ed.2d at 903. The court in *Kolender* enunciated the void-for-vagueness test as follows:

> As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*

461 U.S. at 357, 103 S.Ct. at 1858.

However, the Pocatello ordinance differs from the California statute in several respects. Foremost, unlike the California statute, the Pocatello ordinance does not make the defendant's refusal to identify himself an element of the offense. For a conviction under the ordinance, the prosecutor must prove that the defendant was loitering or prowling "in a place at a time or in a manner not usual for law-abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity." The "circumstances that warrant alarm" *may* include refusal to identify, but they may also in-

clude (1) taking flight upon the appearance of a peace officer, or (2) manifestly endeavoring to conceal oneself or any object. The peace officer, under the ordinance, must provide the actor with an opportunity to dispel alarm, or there can be no conviction. However, the actor's failure to provide identification that was "credible and reliable," is not an *element* of the offense, and no burden is placed on the defendant to provide such "credible and reliable" identification. Merely proffering of an opportunity to dispel alarm does not in itself violate one's right to due process, nor does it abrogate the right against self-incrimination. Rather, it merely permits the officer to make a threshold inquiry to evaluate the situation and to determine whether the "circumstances warrant alarm for the safety of persons or property in the vicinity." This feature of the statute dispels the fatal constitutional flaw of this ordinance suggested by the majority by providing the guidelines necessary to determine whether an officer had made the correct approach to the enforcement of the statute. The identification procedure in the loitering and prowling ordinance is no different than in a suspected burglary. For example, if the defendant Bitt had been found inside the closed convenience store, rather than outside pounding on the door, the officer would have been entitled to ask him to identify himself so that the officer could determine whether he was the owner, or a burglar. If a suspect under those circumstances could identify himself and establish a legitimate reason for being there, a burglary arrest would, of course, be prevented. If the suspect could not identify himself or reasonably explain his presence, likely he would be arrested for burglary. The mere fact that the ordinance requires an officer to give a suspected person the opportunity to dispel alarm before a person can be convicted under the ordinance does not put a requirement on the suspect to "provide a 'credible or reliable' identification," as was the case in *Kolender,* nor does it make the defendant's refusal an element of the crime as was the situation

with the California statute involved in *Kolender.*

Since *Kolender,* several jurisdictions have interpreted their similar MPC–based loitering and prowling statutes in this manner and have upheld their constitutionality on a void for a facial vagueness/due process analysis. *See e.g., City of Milwaukee v. Nelson,* 149 Wis.2d 434, 439 N.W.2d 562 (1989), *Watts v. State,* 463 So.2d 205 (Fla. 1985), *Bell v. State,* 313 S.E.2d 678 (Ga. 1984), *contra, Fields v. City of Omaha,* 810 F.2d 830 (8th Cir.1987). I would join the Supreme Courts of Wisconsin, Florida and Georgia in upholding the constitutionality of this MPC-based ordinance. The ordinance defines the crime "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." 461 U.S. at 357, 103 S.Ct. at 1858.

The ordinance found unconstitutional in *Kolender* can be distinguished on another basis. The *Kolender* statute outlawed loitering or wandering "upon the streets or from place to place...." The *Kolender* court found that the statute "implicate[d] consideration of the constitutional right to freedom of movement." 461 U.S. at 358, 103 S.Ct. at 1859. The Pocatello ordinance, however, is not directed at wandering "upon the streets or from place to place," but from the sketchy facts in this case was directed toward prowling on private property. The Pocatello ordinance is capable of a constitutionally valid application where a person is charged with "prowl[ing] in a place at a time or in a manner not usual for law-abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity." The example of the darkly-clothed and masked man crouching in the bushes outside the bedroom window of a single woman's apartment in the middle of the night surely would constitute a constitutional application of the ordinance's prohibition against "loiter[ing] or prowl[ing] in a place at a time or in a manner not usual for law-abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity." Ac-

cordingly, the ordinance is not unconstitutional in every application under either the fourth amendment of the United States Constitution or the due process clauses of the fifth and fourteenth amendments of the United States Constitution, or under Art. 1, § 17, of the Idaho Constitution.

I would reverse the judgments of the magistrate and district courts with directions to reinstate the complaint.

BOYLE, Justice, dissenting:

I respectfully dissent from the opinion of the Court and cannot agree that Pocatello City Ordinance § 9.16.070 is facially unconstitutional and incapable of any valid application. Although the ordinance may arguably be inapplicable under the present facts and circumstances I cannot join the majority opinion which invalidates it in every application. I would adopt the same interpretation as the Wisconsin Supreme Court in *City of Milwaukee v. Nelson,* 439 N.W.2d 562 (Wis.1989), and hold that the ordinance is not facially unconstitutional for all purposes. Likewise, the ordinance is not unconstitutional on a void for facial vagueness/due process analysis and is distinguishable from the California statute in *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). Accordingly, I respectfully dissent.