STATE OF NORTH CAROLINA v. WILLIAM CARTER DOWNES

No. 811SC1115

(Filed 4 May 1982)

1. **Criminal Law § 68; Searches and Seizures § 4— hair samples seized pursuant to warrants—constitutionality—evidence concerning admissible**

In a prosecution for murder and armed robbery, the trial court properly admitted expert testimony concerning the comparison of hair samples from rubber gloves found close to the crime scene and hair samples from

State v. Downes

defendant's arm. The Fourth Amendment's protection against unreasonable searches and seizures does not extend to an individual's personal traits. Therefore, the fact that the trial court found an affidavit attached to an application for a search warrant established no probable cause to believe that defendant committed the armed robbery and homicide, did not mean that the hair sample evidence was inadmissible.

**2. Criminal Law § 46— evidence of flight—instructions proper**

   In a prosecution for murder and armed robbery, the trial court did not err in instructing the jury on the evidence of flight where the evidence tended to show that police followed defendant from an apartment where he was staying but lost him; that the tenant leasing the apartment came out of it with a bag of clothes and then drove to a parking lot where he picked up defendant; that when a marked police car and several unmarked cars stopped the car in which defendant was riding, he ran from the car until halted by police and that there was a toothbrush in defendant's pocket and a bag of clothes in the car.

**3. Homicide § 21.7; Robbery § 4.3— second degree murder—armed robbery—sufficiency of evidence**

   The trial court properly submitted the issue of armed robbery and second degree murder to the jury where the State's evidence tended to show that defendant had been employed by the motel robbed; that the shotgun found on the floor near the victim's body had the same serial number as the gun given defendant by his mother for Christmas in 1978; that a ballistics expert testified that a spent shell from the shotgun killed the victim; that comparisons done on two rubber gloves found outside the motel lobby revealed marks on the shotgun and safe door matched marks on the gloves; and that an examination of hairs in one of the gloves showed them to be miscroscopically consistent with hair samples taken from the defendant.

APPEAL by defendant from Smith (Donald L., Jr.), Judge. Judgment entered 9 April 1981 in Superior Court, DARE County. Heard in the Court of Appeals 11 March 1982.

Defendant was indicted for first-degree murder and armed robbery and found guilty of second-degree murder and armed robbery. From the imposition of a sentence of a maximum of life imprisonment to a minimum of fifty years' imprisonment, defendant appeals.

The State presented evidence that on 2 September 1980 between 4:00 and 5:30 a.m. Charles Edgar Mann, IV, a night auditor at the Armada Inn Motel in Nags Head, North Carolina, was killed during a robbery of the motel office. The police found a 12-gauge shotgun near Mann's body behind the front desk in the lobby of the motel. Further investigation revealed that this shotgun had been purchased by defendant's mother and given to

him as a Christmas present in 1978. Two rubber gloves were found outside the lobby. It was later discovered that latent fabric marks, consistent with the type of marks left by rubber gloves such as were found at the crime scene, were on the shotgun. Two hairs were found in one of the gloves; these hairs were compared to defendant's hair and found to be microscopically consistent with defendant's hair samples. Prior to the admission of the evidence concerning the hair comparisons, the defendant moved to suppress it on the ground that the hair samples from defendant had been obtained illegally. This motion was denied.

In July 1980 defendant and his wife, who had been living in Wanchese, North Carolina, moved to Maryland. Defendant's wife returned to Wanchese in August, 1980, while defendant remained in Maryland. After the Commission of the robbery and shooting in the early hours of 2 September 1980, defendant went to his wife's house in Wanchese and picked up some of his belongings before returning to Maryland. On 10 September 1980 the car in which defendant was riding was stopped by Maryland law enforcement officers. Defendant ran from the car for about fifty feet until ordered to stop by the officers.

Defendant presented no evidence.

*Attorney General Edmisten by Assistant Attorney General Ralf F. Haskell for the State.*

*Appellate Defender Adam Stein by Assistant Appellate Defender Malcolm R. Hunter, Jr., for defendant appellant.*

CLARK, Judge.

[1] Defendant first argues that the trial court erred in admitting evidence concerning his hair samples which he contends were seized in violation of his constitutional rights under the Fourth and Fourteenth Amendments. The search warrant which authorized the plucking of hairs from defendant's scalp and arms was issued upon two affidavits. After *voir dire* on defendant's motion to suppress, the court found that the second affidavit attached to the application for the search warrant established no probable cause to believe that defendant committed the armed robbery and homicide on 2 September 1980. However, the court found that the first affidavit concerning an armed robbery on 2 July 1980 at the

Sea Ranch Motel in Kill Devil Hills was sufficient to establish probable cause to believe that the defendant had committed that crime and that the head and arm hairs of defendant would probably constitute evidence of that robbery. The court held that the warrant was valid as to the offense on 2 July 1980, and that after obtaining defendant's hair samples pursuant to the warrant, the State could use the evidence in the prosecution of defendant for the armed robbery and homicide on 2 September 1980. While we agree with the court's decision concerning the validity of the two affidavits, we do not believe that the warrant authorized the plucking of hairs from defendant's arms. In the Sea Ranch robbery on 2 July 1980, head hairs were found in pantyhose which were worn over the robber's head. The affidavit certainly presented probable cause to believe that head hairs from defendant would constitute evidence of the Sea Ranch robbery. But there was no justification in the Sea Ranch affidavit for the plucking of hairs from the defendant's arms. Therefore, the warrant was only sufficient to allow the seizure of the head hairs from defendant and not his arm hairs.

This does not, however, mean that the hair sample evidence was inadmissible. In his order denying defendant's motion to suppress, Judge Smith stated:

"5. That even if the search warrant issued on or about the first day of January, 1981 were invalid, which it is not, such search warrant would not be necessary to obtain hairs either from the head or arm of the defendant or both, for the reason that the seizure of said hairs are not protected by the Fourth and Fourteenth Amendments to the Constitution of the United States nor the Law of the Land Clause of the Constitution of North Carolina for the reason that they are individual personal traits such to view by any person, and defendant had no reasonable expectations of privacy in these features, since they are exposed to view as a matter of course.

6. That the methods used by the State of North Carolina in obtaining the hair from the head and left arm of the defendant were reasonable and just in all respects and went beyond the statutory and constitutional requirements that were applicable.

7. That the manner of obtaining said hair samples as aforesaid was valid, legal and constitutional in all respects and were not invalid, illegal or unconstitutional in any respect."

We agree with the trial judge that the seizure of hair samples from defendant's arms and head did not violate his Fourth and Fourteenth Amendment rights against unreasonable searches and seizures. The defendant was in custody at the time of the taking of the hair samples, and there is no evidence that the means used to obtain the samples was unreasonable. The seizure of hair samples from a defendant without a warrant after a lawful arrest is not an unreasonable seizure since it is a minor intrusion into and upon an individual's person. *Grimes v. United States,* 405 F. 2d 477 (5th Cir. 1968); *State v. Reynolds,* 298 N.C. 380, 259 S.E. 2d 843 (1979), *cert. denied,* 446 U.S. 941, 64 L.Ed. 2d 795, 100 S.Ct. 2164 (1980); *State v. Sharpe,* 284 N.C. 157, 200 S.E. 2d 44 (1973). The Fourth Amendment's protection against unreasonable searches and seizures does not extend to an individual's personal traits. "One does not have a reasonable expectation of privacy in those features which serve to distinguish one individual from another and which are exposed to the view of others as a matter of course. *United States v. Dionisio,* 410 U.S. 1, 35 L.Ed. 2d 67, 93 S.Ct. 764 (1973); *Davis v. Mississippi,* 394 U.S. 721, 22 L.Ed. 2d 676, 89 S.Ct. 1394 (1969); *State v. Sharpe,* [supra]." *State v. McDowell,* 301 N.C. 279, 289-90, 271 S.E. 2d 286, 293 (1980), *cert. denied,* 450 U.S. 1025, 68 L.Ed. 2d 220, 101 S.Ct. 1731 (1981). We hold that the expert testimony concerning the comparison of the hair samples from the rubber gloves and from defendant's arm was properly admitted and overrule this assignment of error.

[2] Defendant next argues that the trial court erred in instructing the jury on the evidence of flight. He contends that the fact that defendant was found in Maryland and that he ran from the car after it was stopped by police is not evidence of flight. We disagree. State's evidence tended to show that defendant had moved to Maryland; he returned to pick up some belongings at his wife's house in Wanchese shortly after the robbery and shooting occurred; that after his return to Maryland, local police, upon a fugitive warrant for defendant's arrest, began a stakeout of the apartment where defendant was staying; that they followed

defendant from the apartment but lost him; that the tenant leasing the apartment came out of it with a bag of clothes and then drove to a parking lot where he picked up defendant; that when a marked police car and several unmarked cars stopped the car in which defendant was riding, he ran from the car until halted by police; that there was a toothbrush in defendant's pocket and a bag of his clothes in the car. We hold that this evidence was sufficient to support an instruction on flight. An instruction on flight is properly given when there is some evidence in the record to reasonably support the theory that defendant fled after commission of the crime charged. *State v. Irick,* 291 N.C. 480, 231 S.E. 2d 833 (1977). The court properly instructed the jury that evidence of flight is not in itself proof of guilt but merely one circumstance to be considered by the jury in passing upon the question of defendant's guilt. *State v. Lampkins,* 283 N.C. 520, 196 S.E. 2d 697 (1973).

[3] Defendant's last assignment of error concerns the denial of defendant's motion to dismiss at the close of State's evidence on the ground that the evidence was insufficient to support a guilty verdict. A motion for nonsuit requires consideration of all the evidence in the light most favorable to the State. All of the State's evidence must be taken as true, and there must be substantial evidence of all material elements of the offense in order to overcome the motion to dismiss. *State v. Witherspoon,* 293 N.C. 321, 237 S.E. 2d 822 (1977); *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431 (1956). The test of the sufficiency of the evidence to withstand a motion to dismiss is the same for either direct or circumstantial evidence. *State v. Stephens, supra.*

> "When a motion for nonsuit questions the sufficiency of circumstantial evidence, the question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. (Citation omitted.) If so, it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that defendant is guilty. (Citation omitted.)"

*State v. Snead,* 295 N.C. 615, 618, 247 S.E. 2d 893, 895 (1978).

The evidence establishes that in the early morning hours of 2 September 1980 money was unlawfully taken from the Armada Inn; that the robbery was accomplished by the use or threatened

use of a dangerous weapon, a shotgun; and that the victim was shot in the forehead and killed during the course of the robbery. Therefore, there was substantial evidence of all material elements of armed robbery, *State v. Joyner*, 295 N.C. 55, 243 S.E. 2d 367 (1978), and of murder in the second degree, *State v. Hodges*, 296 N.C. 66, 249 S.E. 2d 371 (1978).

State's evidence also tended to show that defendant had committed the crimes charged. Defendant had been employed by the Armada Inn and had been trained by the deceased as a substitute night auditor. He was familiar with the location of the safe, the key which opened the safe, the safety deposit boxes and their keys. The shotgun found on the floor near the victim's body had the same serial number as the gun given defendant by his mother for Christmas in 1978. A ballistics expert testifed that the spent shell from the shotgun killed Mr. Mann. There was evidence that defendant had a shotgun in July 1980 when he lived in Wanchese and that after he moved to Maryland, the gun was no longer in the house in Wanchese. Two rubber gloves were found outside the motel lobby, and comparisons of fabric marks on the gloves with marks on the shotgun and safe door showed that they matched. An examination of hairs found in one of the gloves showed them to be microscopically consistent with hair samples taken from defendant. The evidence also tended to show that defendant ran when stopped by Maryland police.

When viewed in the light most favorable to the State, State's evidence was sufficient to create a reasonable inference of defendant's guilt, requiring the court to submit the issue to the jury. We hold that defendant's motion to dismiss was properly denied.

We find that defendant received a fair trial, free of prejudicial error.

No error.

Judges ARNOLD and WEBB concur.