30 P.3d 995

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Ricky G. SHEARER, Defendant–Appellant.**

No. 26322.

Court of Appeals of Idaho.

July 25, 2001.

Gary H. Lew, Nampa, for appellant.

Hon. Alan G. Lance, Attorney General; Rebekah A. Cude, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

Ricky Shearer appeals from his conviction for misdemeanor driving under the influence of alcohol (DUI), Idaho Code § 18–8004. He argues that the magistrate should have granted his motion to suppress evidence obtained during a traffic stop because the statute that Shearer was suspected of violating is unconstitutional and because the law enforcement officer's request that Shearer remove his sunglasses was an illegal search.

## I.

### FACTS AND PROCEDURAL HISTORY

Deputy Sheriff James Lewis was on patrol when he met a vehicle driven by Shearer going the opposite direction. Deputy Lewis decided to stop Shearer's vehicle because he believed that it was too noisy to be in compliance with an Idaho statute governing vehicle noise, I.C. § 49–937. When Deputy Lewis approached Shearer and requested his driver's license, Lewis could smell cigarette smoke but did not detect the odor of alcohol or see any other signs of intoxication. Lewis told Shearer why he had been stopped, and Shearer explained that repair work was being done on his vehicle's muffler that day and had not been completed.

Shearer, whose eyes are especially sensitive to light, was wearing sunglasses even though it was an overcast December day. Deputy Lewis suspected that Shearer was using the sunglasses to conceal his eyes from the officer's view and asked Shearer to remove them. When Shearer did so, Lewis could see that Shearer's eyes were bloodshot. Because of this, Lewis suspected that Shearer was under the influence of alcohol and therefore administered a gaze nystagmus test, which indicated intoxication. Lewis summoned another deputy, who administered another gaze nystagmus test and reached a similar conclusion. The two deputies then had Shearer exit his vehicle and perform other field sobriety tests, some of which he failed. The officers concluded that Shearer was intoxicated and arrested him for DUI.

Thereafter, a breath test was administered which showed an alcohol concentration of more than double the legal limit.

Shearer moved to suppress all the evidence of his intoxication on the grounds that: (1) the initial stop of his vehicle was unjustified because the vehicle noise statute he was suspected of violating is unconstitutional, and (2) Deputy Lewis's instruction for Shearer to remove his sunglasses constituted an impermissible search. The magistrate denied the motion. Shearer then entered a conditional plea of guilty, reserving his right to appeal the denial of his suppression motion. On intermediate appeal, the district court affirmed the decision of the magistrate.

## II.

### ANALYSIS

#### A. Constitutionality of I.C. § 49–937

We consider first Shearer's contention that the stop of his vehicle was unlawful because it was based upon suspicion of a violation of an unconstitutional statute. An investigative stop of a motor vehicle constitutes a "seizure" of the occupants that is governed by the Fourth Amendment prohibition against unreasonable seizures. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660, 667 (1979); *State v. Sevy*, 129 Idaho 613, 614–15, 930 P.2d 1358, 1359–60 (Ct.App.1997); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). Such temporary detentions do not violate the Fourth Amendment if they are based upon a reasonable, articulable suspicion that the person who is stopped has committed or is about to commit a crime. *Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983); *State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998); *Sevy, supra.*

Deputy Lewis stopped Shearer in the belief that he was violating I.C. § 49–937, which states in part:

(1) Every motor vehicle shall at all times be equipped with a muffler in good working order and in constant operation to prevent excessive or unusual noise and annoying smoke, and no person shall use a

muffler cut-out, bypass, or similar device upon a motor vehicle on a highway.... No person shall knowingly operate and no owner shall knowingly cause or permit to be operated any motor vehicle originally equipped or required by any law or regulation of the state or the federal government to be equipped with a noise suppressing system while any part of that system is disconnected or while that system or its operation is modified or altered in any manner, except to conform to the manufacturer's specifications.

....

(4) A showing that the sound made by a passenger motor vehicle or motorcycle exceeds the maximum allowable decibel level shall be prima facie evidence of a violation of subsection (1) of this section.

Shearer contends that this statute did not serve as a permissible basis for the stop of his vehicle because the statute is unconstitutionally vague.[1]

■ A statute is unenforceable for vagueness if it " 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute' and permits arbitrary or discriminatory enforcement." *State v. Bitt,* 118 Idaho 584, 585, 798 P.2d 43, 44 (1990) (quoting *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989, 996 (1954)). Although some ambiguity is unavoidable in the English language, a statute that is so ambiguous that persons "of common intelligence must necessarily guess at its meaning and differ as to its application" is unconstitutionally vague. *Id.* (quoting *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926)). *See also State v. Leferink,* 133 Idaho 780, 783, 992 P.2d 775, 778 (1999). "The law must give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." *State v. Lenz,* 103 Idaho 632, 634, 651 P.2d 566, 568 (Ct.App. 1982). It is also necessary that laws provide sufficient standards to those who will enforce them. *Bitt,* 118 Idaho at 585–86, 798 P.2d at 44–45. "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Id.* at 586, 798 P.2d at 45 (quoting *Grayned v. City of Rockford,* 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–2299, 33 L.Ed.2d 222, 227–228 (1972)). *See also Leferink, supra.*

■ Shearer argues first that I.C. § 49–937 is vague because it refers to a "maximum allowable decibel level" in subsection (4), but does not define that level anywhere in the section. However, definitions provided in I.C. §§ 49–102 to 49–127 apply to words and phrases used throughout Title 49 of the Idaho Code. *See* I.C. § 49–101. The term "excessive or unusual noise" used in I.C. § 49–937(1) is defined in I.C. § 49–106(6) as follows:

"Excessive" or "unusual noise" means any sound made by a passenger motor vehicle or a motorcycle at any time under any condition of grade, speed, acceleration or deceleration, which exceeds ninety-two (92) decibels, or any lower decibel level that is fixed by law or rules adopted by the board of health and welfare ....

Therefore, it is apparent that the "maximum allowable decibel level" referenced in I.C. § 49–937(4) is ninety-two decibels. There is no vagueness merely because the maximum allowable decibel level is not defined within § 49–937 itself.

■ Shearer also argues that § 49–937(1) is vague because it prohibits *both* "excessive or unusual noise" *and* modification of a noise suppressing system except to conform to the manufacturer's specifications. Shearer asserts that the possibility that a noise suppression system could be within manufacturer specifications yet exceed the ninety-two decibel limit for excessive noise renders the statute vague. Shearer's argument is without merit, for it is based on the false premise that an automobile that complies with one part of § 49–937 cannot be simultaneously in

1. In his reply brief on appeal, Shearer for the first time argues that Deputy Lewis lacked reasonable suspicion to believe that Shearer was operating his vehicle in violation of I.C. § 49–937(1). However, new issues may not be raised in an appellant's reply brief. *Struhs v. Protection Techs., Inc.,* 133 Idaho 715, 722, 992 P.2d 164, 171 (1999); *Henman v. State,* 132 Idaho 49, 51, 966 P.2d 49, 51 (Ct.App.1998). Therefore, we do not address that issue.

violation of another part of this same statute. Although it may be an unlikely occurrence, an automobile with a muffler that has never been modified and complies with the manufacturer's specifications may still be in violation of the ninety-two decibel limit. Conversely, if the vehicle decibel level is below ninety-two decibels, the owner or operator of the vehicle may still be in violation of the statute because the person has knowingly disconnected or altered the noise suppression system for purposes other than to conform to the manufacturer's specifications. The legality of alterations to the noise suppression system does not depend upon whether the altered system violates the maximum allowable decibel level. The mere fact that both prohibitions are contained within the same statute does not make the statute vague or internally inconsistent. The decision of the magistrate, holding the traffic stop to be lawful, is therefore affirmed.[2]

## B. Request to Remove Sunglasses

 The second basis asserted for suppression of the evidence of Shearer's intoxication is a contention that Deputy Lewis's request that Shearer remove his sunglasses was an unconstitutional search. A "search" conducted without a warrant is presumed to be unreasonable, and therefore violative of the Fourth Amendment to the United States Constitution, unless the State demonstrates that a recognized exception to the warrant requirement applies. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564, 575–76 (1971); *State v. Kerley*, 134 Idaho 870, 874, 11 P.3d 489, 493 (Ct.App.2000); *State v. Wheaton*, 121 Idaho 723, 725, 827 P.2d 1174, 1176 (Ct. App.1991), *aff'd*, 121 Idaho 404, 825 P.2d 501 (1992). The threshold issue presented here is whether a request or directive to remove sunglasses constitutes a search that implicates the Fourth Amendment. We conclude that it does not.

 The Fourth Amendment prohibition of unreasonable searches protects from governmental intrusion only those places and things in which an individual has a legitimate expectation of privacy. *Oliver v. United States*, 466 U.S. 170, 177, 104 S.Ct. 1735, 1740, 80 L.Ed.2d 214, 223 (1984); *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220, 226 (1979); *State v. Morris*, 131 Idaho 562, 565, 961 P.2d 653, 656 (Ct.App.1998). Because there can be no reasonable expectation of privacy in "[w]hat a person knowingly exposes to the public," *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 581–82 (1967), it has been held that individuals have no expectation of privacy in many aspects of their physical appearance. For example, in *United States v. Richardson*, 388 F.2d 842 (6th Cir.1968), the court concluded that an ultraviolet examination of the defendant's hands was not a search because there is no reasonable expectation of privacy in the appearance of one's hands. Other courts have concluded that there is no expectation of privacy in the appearance of one's teeth, *United States v. Holland*, 378 F.Supp. 144, 155 (E.D.Pa.1974) (holding that a dental examination to determine whether the defendant was missing a tooth in a particular area did not constitute a search); arm hairs, *State v. Downes*, 57 N.C.App. 102, 291 S.E.2d 186 (1982); and handwriting, *United States v. Mara*, 410 U.S. 19, 21–22, 93 S.Ct. 774, 775–76, 35 L.Ed.2d 99, 102–03 (1973).

In *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), the United States Supreme Court held that a grand jury directive to furnish a voice exemplar for comparison to voices on wire tap recordings did not infringe upon a privacy interest. The Court said:

> The physical characteristics of a person's voice, its tone and manner, as opposed to the content of a specific conversation, are constantly exposed to the public. *Like a man's facial characteristics*, or handwriting, his voice is repeatedly produced for others to hear. No person can have a reasonable expectation that others will not know the sound of his voice, *any more than he can reasonably expect that his face will be a mystery to the world.*

*Id.* at 14, 93 S.Ct. at 771, 35 L.Ed.2d at 79. (Emphasis added.) These words from the

---

**2.** By addressing the constitutionality of the statute we do not imply any view as to whether, if the statute were unconstitutional, the traffic stop would consequently be unlawful and the exclusionary rule would have to be applied.

Supreme Court in *Dionisio* strongly suggest that there can be no legitimate expectation of privacy in the appearance of one's eyes, even if they are temporarily concealed by sunglasses.

This precise question was presented to the California Court of Appeals in *People v. Weekly*, 44 Cal.Rptr.2d 322 (Ct.App.1995). Weekly's vehicle was stopped by an officer who, because of Weekly's appearance and behavior, became suspicious that Weekly was under the influence of stimulants. After telling Weekly to remove his sunglasses, the officer could see that Weekly's eyes were dilated. Weekly was then arrested for being under the influence of methamphetamine. Weekly contended that the order to lift his eyeglasses was an unlawful search, but the California court held that he had no reasonable expectation of privacy in the appearance of his eyes. We likewise conclude that an officer's directive for the removal of sunglasses, and his observation of the individual's eyes, once a lawful stop has been made, does not constitute a search because no privacy interest is thereby invaded.

Shearer's argument that he created a reasonable expectation of privacy in the appearance of his eyes by donning sunglasses is unpersuasive. By his own testimony, Shearer was wearing the sunglasses not to protect his privacy but because his eyes were particularly sensitive to light. More importantly, taking minimal steps to temporarily conceal a facial characteristic that is ordinarily and frequently exposed to the public is, in our view, insufficient to create a legitimate expectation of privacy. As the California court explained in *Weekly*: "We find no material basis to distinguish one's eyes from any other facial characteristics commonly and generally exposed to the public but which at various times may be protected from the elements by hats, ear muffs, ski masks, scarves, veils, etc." *Weekly*, 44 Cal.Rptr.2d at 326.

We hold that when an individual has otherwise been lawfully detained, an officer's directive to remove sunglasses in order to allow observation of the person's eyes is not a search within the meaning of the Fourth Amendment. Therefore, Shearer's suppression motion was properly denied.

## III.

### CONCLUSION

We find no merit in Shearer's argument that I.C. § 49–937 is unconstitutionally vague or his assertion that the request for removal of his sunglasses was an unlawful search. Therefore, the magistrate's decision denying Shearer's suppression motion is affirmed.

Chief Judge SCHWARTZMAN and Judge PERRY concur.